# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| WENDY V.,[1] | : | Case No. 2:24-cv-03861 |
| Plaintiff, | : | |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | (by full consent of the parties) |
| | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

## DECISION AND ORDER

Plaintiff filed an application for Disability Insurance Benefits in June 2021. Plaintiff's claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, this Court REVERSES the Commissioner's decision and REMANDS for further proceedings.

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

I.  **BACKGROUND**

Plaintiff asserts that she has been under a disability since January 9, 2020.[2] At that time, she was thirty-three years old. Accordingly, Plaintiff was considered a "younger person" under the Social Security regulations. *See* 20 C.F.R. § 404.1563(c). Plaintiff has a "high school education and above." *See* 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," Doc. No. 6) is summarized in the ALJ's decision ("Decision," Doc. No. 6-2 at PageID 33-59), Plaintiff's Statement of Errors ("SE," Doc. No. 7), and the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 8). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

II.  **STANDARD OF REVIEW**

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

---

[2] Plaintiff initially alleged that her disability began on June 23, 2016. (AR, Doc. No. 6-5 at PageID 228.) At the September 2023 hearing, Plaintiff amended her alleged onset date to January 9, 2020. (AR, Doc. No. 6-2 at PageID 64.)

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "[W]hether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the

3

ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

### III. FACTS

#### A. The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

Step 1: Plaintiff has not engaged in substantial gainful activity since January 9, 2020, the amended alleged onset date.

Step 2: She has the severe impairments of extensor carpi ulnaris subluxation, left wrist; status post stabilization of left extensor carpi ulnaris tendon, repair of the extensor carpi ulnaris sub-sheath; and status post left wrist arthroscopy with debridement and repair.

|         |                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                       |
|---------|---|
|         | She has the nonsevere impairments of gastric esophageal reflux disease, vision issues, migraine headaches, and anxiety. |
| Step 3: | She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | Her residual functional capacity (RFC), or the most she can do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of light work as defined in 20 C.F.R. § 404.1567(b), subject to the following limitations: [S]he is limited to lifting and/or carrying up to 10 pounds occasionally and 10 pounds frequently with the left (non-dominant) upper extremity. [Plaintiff] is limited to occasional crawling. She may never climb ladders, ropes, or scaffolds. She is limited to occasional gross and fine manipulation with the left upper extremity. She can occasionally push and/or pull with the left upper extremity. [Plaintiff] is limited to no more than occasional exposure to hazards, for example: unprotected heights, uneven surfaces, or heavy machinery with unshielded moving mechanical parts<br><br>She is unable to perform any of her past relevant work. |
| Step 5: | Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. |

(Decision, Doc. No. 6-2 at PageID 39, 41-42.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at PageID 52-53.)

### B. Evidence Relating To Plaintiff's Migraine Headaches

#### 1. Subjective complaints

Plaintiff initially alleged that she was disabled by her left wrist condition. (AR, Doc. No. 6-6 at PageID 526.) At the September 2023 hearing, she also alleged disability due to several additional physical and mental impairments, including migraine headaches.

5

(AR, Doc. No. 6-2 at PageID 64-81.) Plaintiff testified that she experienced almost-daily headaches that were often caused by reading. (*Id.* at PageID 76.) She also reported migraine headaches with dizziness and memory loss. (*Id.*) According to Plaintiff, her migraines occurred approximately three times per month, although she experienced a ten-day migraine in May 2023. (*Id.*) Plaintiff said that when she had a migraine, she took medication and generally had to be "in bed for the rest of the day." (*Id.*)

### 2. Medical records

Plaintiff sought emergency room treatment for a head injury in June 2022. (AR, Doc. No. 6-9 at PageID 1691.) Her complaints included headaches, neck pain, and swelling. (*Id.*) A physical examination showed normal musculoskeletal and neurological findings. (*Id.* at PageID 1693.) CT scans of the cervical spine and brain were also normal, and she was discharged without further treatment. (*Id.* at PageID 1695, 1769-71.)

Plaintiff reported continued headaches and related symptoms to her primary care provider in December 2022. (AR, Doc. No. 6-9 at PageID 1680.) A brain MRI later that month showed two foci of nonspecific, age-indeterminate cerebral white matter disease. (*Id.* at PageID 1651-52.)

Upon a referral from her primary care provider, Plaintiff saw a neurologist in January 2023. (*Id.* at PageID 1672.) Plaintiff reported an improvement in her neuropathy symptoms but said she was still experiencing headaches. (*Id.*) Plaintiff also said she had "tried and failed" Inderal, Elavil, Imitrex, and Flexeril. (*Id.* at PageID 1674.) A physical examination was normal. (*Id.* at PageID 1673-74.) Dr. Brenda Adamovich, D.O. diagnosed "headaches/migraines" and prescribed Topamax. (*Id.* at PageID 1674.)

A few days later in January 2023, Plaintiff presented to an emergency room for treatment of heart palpitations. (AR, Doc. No. 6-9 at PageID 1668.) She also complained of headaches. (*Id.*) Plaintiff underwent additional testing to follow up on the abnormal brain MRI findings. MRI reports of the cervical and thoracic spine dated in January 2023 were normal. (*Id.* at PageID 1665-66.) A lumbar puncture in February 2023 showed rare benign mononuclear cells ("monocytes and mature lymphocytes"), but Plaintiff's neurologist interpreted these findings as normal. (*Id.* at PageID 1662, 1781, 1841.)

Plaintiff complained of continued migraines during a primary care visit in May 2023. (AR, Doc. No. 6-9 at PageID 1863-64.) A physical examination at that time was normal. (*Id.* at PageID 1864-65.) When Plaintiff saw her neurologist later that month, she said that her headache symptoms had not improved (*Id.* at PageID 1841.) A physical examination was again normal. (*Id.* at PageID 1843-44.) Plaintiff said that she had not started Topamax but was taking Pamelor. (*Id.* at PageID 1844.) Dr. Adamovich prescribed Imitrex and Aimovig. (*Id.*)

In August 2023, Plaintiff told Dr. Adamovich that she had experienced eight or nine migraines since her last visit in May 2023. (*Id.* at PageID 1891, 1893.) She also said that driving or "any fast movement" could cause headaches. (*Id.*) Another physical examination was normal. (*Id.* at PageID 1895-96.) Dr. Adamovich increased Plaintiff's dosages of Pamelor and Imitrex. (*Id.* at PageID 1897.)

3. **The ALJ's decision**

At Step Two, the ALJ concluded that migraine headaches are not a "severe" impairment as defined in 20 C.F.R. § 404.1520(c). (Decision, Doc. No. 6-2 at PageID

7

40.) The ALJ acknowledged that Plaintiff began reporting migraine headaches in June 2022 when she sought treatment for a head injury. (*Id.*) The ALJ cited the normal head and spinal imaging in the record but acknowledged that the December 2022 brain MRI showed "pineal gland cyst and two foci of nonspecific, age-indeterminate cerebral white matter disease." (*Id.*) The ALJ reasoned that "[t]he evidence does not persuasively establish that her headaches/migraines have resulting [sic] in significant functional limitations." (*Id.*) The ALJ also cited the normal physical examinations in the record: "[Plaintiff's] physical examinations showed normal range of motion in her upper and lower extremities with intact sensation, normal strength, normal coordination, normal gait, normal respiratory and cardiac functioning, normal alertness, orientation, mood/affect, judgment, attention, memory, behavior, thought content, and neurological findings with no deficits (Ex. 22F/13, 22F/22, 22F/26, 22F/31-32, 22F/44, 22F/51-52, 25F/35-36, 25F/56-57, and 25F/87-88)." (*Id.*) The ALJ concluded: "Considering these findings, her headaches/migraines are not severe." (*Id.*)

The ALJ also considered Plaintiff's migraines when formulating the RFC assessment. (Decision, Doc. No. 6-2 at PageID 47-48.) In his summary of the medical records related to Plaintiff's left wrist condition, the ALJ stated that Plaintiff was evaluated in June 2022 for a "possible head injury." (*Id.* at PageID 47.) Then, in his explanation of the RFC limitations and in his analysis of the state agency medical consultants' findings, the ALJ stated that that the restrictions regarding climbing and hazards account for Plaintiff's migraine complaints:

8

> Considering evidence of extensor carpi ulnaris subluxation, left wrist, status post stabilization of left extensor carpi ulnaris tendon, repair of the extensor carpi ulnaris sub-sheath and status post left wrist arthroscopy with debridement and repair with decreased range of motion, decreased strength, mild decreased sensation, and atrophy of the left upper extremity as well as complaints of migraines with dizziness and vision issues, [Plaintiff] may never climb ladders, ropes, or scaffolds and no more than occasional exposure to hazards, as defined above (Ex. 2F/1-10, 3F/9, 6F/6-7, 12F/3, 13F/7-8, 13F/56-58, 14F/129-130, 14F/162-163, 22F/6, 22F/32-33, 22F/40-41, 22F/123-125, 22F/134-135,24F/11, 25F/10, and 25F/105).

(*Id.* at PageID 48, 49.)

IV. **LAW AND ANALYSIS**

    A. **Plaintiff's Assignments of Error**

Plaintiff asserts that the ALJ erred by finding that Plaintiff's migraine headaches are nonsevere. (SE, Doc. No. 7 at PageID 1953-54.) Plaintiff also asserts that ALJ erred by discounting the medical opinion of treating hand surgeon Alan Tracy, M.D. and by finding that Plaintiff's left wrist condition does not meet the requirements of Listing section 1.18. (*Id.* at PageID 1954-57.) Finding error in the ALJ's analysis of Plaintiff's migraine headaches, the Court does not address Plaintiff's other alleged errors and instead instructs the ALJ to address all of them on remand.

    B. **The ALJ Reversibly Erred In His Analysis of Plaintiff's Migraine Headaches.**

        1. **Applicable law**

An ALJ evaluates the severity of a claimant's impairments at Step Two of the sequential evaluation. 20 C.F.R. § 404.1520(a)(4)(ii). Plaintiff bears the burden of establishing that she has a severe impairment that meets the twelve-month duration requirement. *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012); 20

C.F.R. §§ 404.1509 & 404.1520(a)(4)(ii). However, the burden of establishing that an impairment is severe is a "de minimis hurdle in the disability determination process," *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988), and it is intended only to "screen out totally groundless claims." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985).

An impairment is considered severe if it "significantly limits [an individual's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The Social Security Administration has clarified that an impairment will not be considered severe if the "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work ...." Social Security Ruling (SSR) 85-28, 1985 WL 56856, at *3 (S.S.A. January 1, 1985).[3] *Accord Higgs*, 880 F.2d at 862 ("[A]n impairment can be considered not severe only if it is **a slight abnormality that minimally affects work ability** regardless of age, education, and experience.") (emphasis added).

Social Security Ruling (SSR) 19-4p governs an ALJ's consideration of headache disorders in the Sequential Evaluation. SSR 19-4p, 2019 WL 4169635 (S.S.A. Aug. 26, 2019). SSR 19-4p provides guidance on how "primary headache disorders" – including migraine headaches – are established and evaluated. *Id.* at *4. It notes that physicians diagnose a primary headache disorder "only after excluding alternative medical and psychiatric causes of a person's symptoms," and "after reviewing a person's full medical

---

[3] Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1).

10

and headache history and conducting a physical and neurological examination." (*Id.* at *4.) To rule out other medical conditions, a physician "may also conduct laboratory tests or imaging scans." (*Id.*) But while such imaging "may be useful ruling out other possible causes of headache symptoms, it is not required for a primary headache disorder diagnosis." (*Id.*) For example: "[P]hysicians may use magnetic resonance imaging (MRI) to rule out other possible causes of headaches—such as a tumor—meaning that an unremarkable MRI is consistent with a primary headache disorder diagnosis." (*Id.*)

The SSR also lists the types of objective evidence that an ALJ will consider when determining whether headaches constitute a medically determinable impairment (MDI) at Step 2. *Id.* at *5-6. The ALJ "will not establish the existence of an MDI based only on a diagnosis or a statement of symptoms" but "will consider the following combination of findings reported by an [acceptable medical source (AMS)]":

- A primary headache disorder diagnosis from an AMS. Other disorders have similar symptoms, signs, and laboratory findings. A diagnosis of one of the primary headache disorders by an AMS identifies the specific condition that is causing the person's symptoms. The evidence must document that the AMS who made the diagnosis reviewed the person's medical history, conducted a physical examination, and made the diagnosis of primary headache disorder only after excluding alternative medical and psychiatric causes of the person's symptoms. In addition, the treatment notes must be consistent with the diagnosis of a primary headache disorder.

- An observation of a typical headache event, and a detailed description of the event including all associated phenomena, by an AMS. During a physical examination, an AMS is often able to observe and document signs that co-occur prior to, during, and following the headache event. Examples of co-occurring observable signs include occasional tremors, problems concentrating or remembering, neck stiffness, dizziness, gait instability, skin flushing, nasal congestion or rhinorrhea (runny nose), puffy eyelid, forehead or facial sweating, pallor, constriction of the pupil, drooping of the upper eyelid, red eye, secretion of tears, and the need to be in a quiet or

11

> dark room during the examination. In the absence of direct observation of a typical headache event by an AMS, we may consider a third party observation of a typical headache event, and any co-occurring observable signs, when the third party's description of the event is documented by an AMS and consistent with the evidence in the case file.
>
> - Remarkable or unremarkable findings on laboratory tests. We will make every reasonable effort to obtain the results of laboratory tests. We will not routinely purchase tests related to a person's headaches or allegations of headaches. We will not purchase imaging or other diagnostic or laboratory tests that are complex, may involve significant risk, or are invasive.
>
> - Response to treatment. Medications and other medical interventions are generally tailored to a person's unique symptoms, predicted response, and risk of side effects. Examples of medications used to treat primary headache disorders include, but are not limited to, botulinum neurotoxin (Botox®), anticonvulsants, and antidepressants. We will consider whether the person's headache symptoms have improved, worsened, or remained stable despite treatment and consider medical opinions related to the person's physical strength and functional abilities. When evidence in the file from an AMS documents ongoing headaches that persist despite treatment, such findings may constitute medical signs that help to establish the presence of an MDI.

*Id.* at *6.

SSR 19-4p also directs the ALJ how to consider headaches when assessing the RFC:

> We must consider and discuss the limiting effects of all impairments and any related symptoms when assessing a person's RFC. The RFC is the most a person can do despite his or her limitation(s). We consider the extent to which the person's impairment-related symptoms are consistent with the evidence in the record. For example, symptoms of a primary headache disorder, such as photophobia, may cause a person to have difficulty sustaining attention and concentration. Consistency and supportability between reported symptoms and objective medical evidence is key in assessing the RFC.

*Id.* at *7-8.

12

### 2. The ALJ did not apply the correct legal standards when he concluded that Plaintiff's migraine headaches are nonsevere.

Reversal is required because the ALJ did not apply the correct legal standards when he concluded that Plaintiff's migraine headaches are nonsevere. The ALJ relied on normal imaging and physical examination findings to reach this conclusion:

> Her cervical spine CT scan also showed no acute cervical fracture and normal alignment (Ex. 22F/52 and 22F/127). In December 2022, her brain magnetic resonance image (MRI) showed a pineal gland cyst and two foci of nonspecific, age-indeterminate cerebral white matter disease (Ex. 22F/123-125). She was assessed with an abnormal brain MRI and headaches/migraines and prescribed Imitrex and Aimovig (Ex. 22F/32-33 and 25F/36). MRI of her cervical and thoracic spine from January 2023 was unremarkable (Ex. 22F/100-105). She also had a lumbar puncture in February 2023 with normal findings (Ex. 22F/89-90 and 25F/86). The evidence does not persuasively establish that her headaches/migraines have resulting in significant functional limitations. [Plaintiff's] physical examinations showed normal range of motion in her upper and lower extremities with intact sensation, normal strength, normal coordination, normal gait, normal respiratory and cardiac functioning, normal alertness, orientation, mood/affect, judgment, attention, memory, behavior, thought content, and neurological findings with no deficits (Ex. 22F/13, 22F/22, 22F/26, 22F/31-32, 22F/44, 22F/51-52, 25F/35-36, 25F/56-57, and 25F/87-88). Considering these findings, her headaches/migraines are not severe.

(Decision, Doc. No. 6-2 at PageID 40.)

The ALJ therefore concluded that Plaintiff's migraine headaches are nonsevere because, except for one abnormal brain MRI, Plaintiff's imaging studies and physical examinations were normal. However, "the absence of headache[s] on examination or otherwise normal imaging results do not preclude chronic headaches." *Aalen P. v. Comm'r of Soc. Sec.*, No. C20-5826-BAT, 2021 WL 2644576, at *1 (W.D. Wash. June 28, 2021) (citing SSR 19-4p, 2019 WL 4169635, at*4). Indeed, SSR 19-4p explains that "imaging and laboratory tests are used to 'rule out' other medical conditions, not to

measure the severity of headaches, and 'unremarkable' results are nevertheless consistent with headache disorders." *Crystal R.W. v. Comm'r of Soc. Sec.*, No. C22-1685-BAT, 2023 WL 3815373, at *5 (W.D. Wash. June 5, 2023) (citing SSR 19-4p, 2019 WL 4169635, at *4); *see also Brown v. Comm'r of Soc. Sec.*, No. 2:17-cv-13137, 2018 WL 7078577, at *12 (E.D. Mich. Dec. 18, 2018), *report and rec. adopted*, No. 17-13137, 2019 WL 265771 (E.D. Mich. Jan. 18, 2019) (noting that "traditional forms of 'objective evidence' lack their usual ascendancy in this context").

Significantly, the ALJ's decision neither referred to SSR 19-4p nor indicated that he performed the analysis required by SSR 19-4 when he found that Plaintiff's headaches are nonsevere. Because the ALJ failed to consider SSR 19-4p when determining whether Plaintiff's headaches are severe or nonsevere, the ALJ failed to apply the correct legal standards and his decision should be reversed.

The Court acknowledges that in cases that were decided before the Social Security Administration issued SSR 19-4p, the Sixth Circuit held that objective evidence must "support the existence or severity" of a claimant's subjective claim of debilitating headaches. *Long v. Comm'r of Soc. Sec.*, 56 F. App'x 213, 214 (6th Cir. 2003) (citing *McCormick v. Secretary of Health and Human Services*, 861 F.2d 998 (6th Cir. 1988)). However, SSR 19-4p cited and relied upon updated medical information about the "classification of headache disorders and diagnostic criteria for scientific, educational, and clinical use." SSR 19-4p, 2019 WL 4169635, at *2 (citing International Headache Society, *The International Classification of Headache Disorders* (3rd ed. 2018)).

14

Because the guidance in SSR 19-4p conflicts with and appears to supersede the holdings in *Long* and *McCormick*, the Court will decline to follow those decisions here.

### 3. The ALJ's conclusion that Plaintiff's migraines are nonsevere is not supported by substantial evidence.

The ALJ's decision will also be reversed because it ignored significant evidence that supports Plaintiff's claim that migraine headaches affect her ability to work. As stated above, Plaintiff testified at the hearing that she experienced almost-daily headaches that were often caused by reading. (AR, Doc. No. 6-2 at PageID 64-81.) Plaintiff also complained of migraine headaches with dizziness and memory loss, and said they occurred approximately three times per month. (*Id.*) According to Plaintiff, when she had a migraine, she took medication and generally had to be "in bed for the rest of the day." (*Id.*) She also said she experienced a ten-day migraine in May 2023. (*Id.*)

To some extent, Plaintiff's complaints are corroborated by the medical records. She sought emergency room treatment for a head injury in June 2022. (AR, Doc. No. 6-9 at PageID 1691.) Although Plaintiff was discharged after CT scans of the cervical spine and brain were normal (*id.* at PageID 1695, 1769-71), she reported continued headaches to her primary care provider in December 2022. (*Id.* at PageID 1680.) A brain MRI later that month showed two foci of nonspecific, age-indeterminate cerebral white matter disease. (*Id.* at PageID 1651-52.) Plaintiff began seeing a neurologist for her headache complaints in January 2023 and reported that she "tried and failed" Inderal, Elavil, Imitrex, and Flexeril. (*Id.* at PageID 1672-74.) Even though her physical examination was normal, Dr. Adamovich nevertheless diagnosed "headaches/migraines" and prescribed

15

Topamax. (*Id.* at PageID 1674.) And, although a subsequent lumbar puncture was normal (*id.* at PageID 1662, 1781, 1841), Plaintiff complained of continued migraines during a May 2023 primary care visit in May 2023. (*Id.* at PageID 1863-64.) Plaintiff told her neurologist later that month that her headaches had not improved. (AR, Doc. No. 6-9 at PageID 1841.) Plaintiff had not yet started Topamax but was taking Pamelor, and Dr. Adamovich prescribed Imitrex and Aimovig. (*Id.* at PageID 1844.) Consistent with Plaintiff's testimony at the hearing, Plaintiff told Dr. Adamovich in August 2023 that she had experienced eight or nine migraines since the last visit in May 2023. (*Id.* at PageID 1891, 1893.) And although another physical examination was normal, Dr. Adamovich increased Plaintiff's dosages of Pamelor and Imitrex. (*Id.* at PageID 1895-97.)

    The ALJ did not discuss any of this evidence in the decision. Nor did he account for it with the RFC limitations for climbing and hazards. (*See generally*, Decision, Doc. No. 6-2 at PageID 40, 42-49.) The Court acknowledges that an ALJ's decision "need not be so comprehensive as to account with meticulous specificity for each finding and limitation, nor is the ALJ required to discuss every piece of evidence in the record." *Correa v. Comm'r of Soc. Sec.*, No. 1:23-cv-685, 2023 U.S. Dist. LEXIS 231766, at *31 (N.D. Ohio Dec. 14, 2023) (citing *Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012); *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004)). Nevertheless, the ALJ's "factual findings as a whole" must show that he "implicitly resolved the conflicts in the evidence." *Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 437 n.11 (6th Cir. 2014). The ALJ must also "provide sufficient explanation for the claimant and any reviewing court to 'trace the path of his reasoning'" and explain "with specificity" how

16

the evidence supports the RFC limitations. *Correa*, 2023 U.S. Dist. LEXIS 231766, at *31-32 (citing *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011); *Bailey v. Comm'r of Soc. Sec.*, No. 98-3061, 1999 U.S. App. LEXIS 1621, at *12 (6th Cir. Feb, 2, 1999); *Bledsoe v. Comm'r of Soc. Sec.*, No. 1:09-cv-564, 2011 U.S. Dist. LEXIS 11925, at *12 (S.D. Ohio Feb. 8, 2011)). Here, the ALJ did not build the required logical bridge between the medical and other evidence of record and his conclusion that the evidence fails to support the claimed severity of Plaintiff's migraines. For example, the ALJ did not account for the testimony of a vocational expert that a hypothetical individual who needed to be absent more than one-and-a-half days per month or off task more than fifteen percent of the workday could not perform any full-time, competitive jobs in the national economy. (AR, Doc. No. 6-2 at PageID 85.)

### 4. Because the ALJ's error is not harmless, reversal is required.

Defendant argues that the Court should nevertheless affirm the ALJ's decision because the ALJ's failure to find Plaintiff's headaches severe at Step Two is "'legally irrelevant.'" (Mem. In Opp., Doc. No. 8 at PageID 1965-66 (citing *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)).) Specifically, because the ALJ found that Plaintiff had impairments that were severe, Defendant argues that he was required to consider "all impairments, severe and not severe, in the sequential evaluation process." (*Id.*) While this assertion is a correct statement of the law, it does not excuse the ALJ's consideration of Plaintiff's migraine headaches under the circumstances of this case.

Defendant correctly asserts that an ALJ who formulates a claimant's RFC must consider the "limitations and restrictions imposed by all of an individual's impairments,

17

even those that are not 'severe.'" SSR 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996). Further, it is also true that if an ALJ finds at least one severe impairment, then the failure to find additional severe impairments at Step Two "[does] not constitute reversible error" if the ALJ "considers all of a claimant's impairments in the remaining steps of the disability determination." *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) (citing *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir.1987)). In other words, if the ALJ "finds at least one severe impairment and analyzes all impairments in the following steps, the characterization of other impairments as severe or nonsevere is 'legally irrelevant.'" *Deaner v. Comm'r of Soc. Sec.*, 840 F. App'x 813, 817 (6th Cir. 2020) (quoting *Anthony*, 266 F. App'x at 457 (6th Cir. 2008)).

However, this rule presupposes that the ALJ did, in fact, consider all of Plaintiff's nonsevere impairments when assessing the RFC. In *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 326 (6th Cir. 2015), for example, the court held that because the ALJ's RFC determination "did not consider [plaintiff's] mental impairments in a meaningful way," the ALJ's error in categorizing those impairments as nonsevere was not harmless and required reversal. *Winn*, 615 F. App'x at 326.

This case is analogous to *Winn.* Here, the ALJ stated that the RFC restrictions regarding climbing and exposure to hazards accounted for Plaintiff's migraines:

> Considering evidence of extensor carpi ulnaris subluxation, left wrist, status post stabilization of left extensor carpi ulnaris tendon, repair of the extensor carpi ulnaris sub-sheath and status post left wrist arthroscopy with debridement and repair with decreased range of motion, decreased strength, mild decreased sensation, and atrophy of the left upper extremity **as well as complaints of migraines with dizziness and vision issues,** [Plaintiff] may never climb ladders, ropes, or scaffolds and no more than occasional

18

> exposure to hazards, as defined above (Ex. 2F/1-10, 3F/9, 6F/6-7, 12F/3, 13F/7-8, 13F/56-58, 14F/129-130, 14F/162-163, 22F/6, 22F/32-33, 22F/40-41, 22F/123-125, 22F/134-135,24F/11, 25F/10, and 25F/105).

(*Id.* at PageID 48, 49 (emphasis added).) However, the ALJ did not acknowledge or conduct the analysis required by SSR 19-4p when he determined that Plaintiff's migraine headaches are nonsevere. Because the ALJ improperly concluded that normal imaging and objective testing show that Plaintiff's migraines are nonsevere—which is defined as "a slight abnormality that minimally affects work ability," *Higgs*, 880 F.2d at 862—this Court cannot find that the ALJ's RFC limitations account for this impairment. Since the ALJ's RFC determination does not consider Plaintiff's migraines "in a meaningful way," the error is not harmless and it requires reversal. See *Winn*, 615 F. App'x at 325-26.

## V. REMAND

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under Sentence Four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is neither overwhelming nor strong while contrary evidence is lacking. *Faucher*, 17 F.3d at 176. However, Plaintiff is entitled to an Order remanding

19

this case to the Social Security Administration pursuant to Sentence Four of Section 405(g) for the reasons stated above. On remand, the ALJ should further develop the record as necessary, particularly as to Plaintiff's migraine headaches, and evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's regulations and rulings and governing case law. The ALJ should evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her application for Disability Insurance Benefits should be granted.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. No. 7) is GRANTED;

2. The Court REVERSES the Commissioner's non-disability determination;

3. No finding is made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4. This matter is REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Order; and

5. This case is terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge